IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. WHITE, )<br>NO. 13888-084 )<br>          )<br>     Plaintiff, )<br>          )   Case No. 16−cv−0968−JPG<br>vs. )<br>          )<br>UNITED STATES of AMERICA )<br>          )<br>     Defendants. )<br>          ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff William A. White, an inmate in United States Penitentiary Marion ("USP-Marion"), brings this action pursuant to the Federal Tort Claims Act ("FTCA") alleging "torture, negligence, breach of duty of case, [and] intentional infliction of . . . emotional distress." (Doc. 1, p. 11).  This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

### The Complaint

Plaintiff alleges that Defendant United States inflicted post-traumatic stress disorder ("PTSD") on him on three different occasions and exacerbated the disorder on several others. Plaintiff alleges that the initial acts in question occurred between October 17, 2008 and June 8, 2015. (Doc. 1, p. 13). Between October 17, 2008 and December 29, 2009, Plaintiff was incarcerated at the Roanoke City Jail in Roanoke, Virginia, and at the Metropolitan Correction Center in Chicago, Illinois ("MCC-Chicago"). (Doc. 1, p. 12). Plaintiff alleges that he was arrested on October 17, 2008. (Doc. 1, p. 16). Upon his arrest, he was subjected to sleep deprivation for a week. (Doc. 1, p. 16). He was placed in a 7 by 7 room with no exterior window under constant bright light. (Doc. 1, p. 16). Plaintiff did not receive hygiene items or clothes. (Doc. 1, p. 16). Plaintiff alleges that a Roanoke City Sheriff deliberately deprived him of sleep on the orders of the U.S. Marshals Service. (Doc. 1, p. 16).

On November 7, 2008, Plaintiff was transferred to MCC-Chicago. (Doc. 1, p. 16). He was placed in an unheated cell and issued no linens or blankets. (Doc. 1, p. 17). These conditions persisted for five days, and Plaintiff had to survive by wrapping a mattress around himself. (Doc. 1, p. 17). At some point, Plaintiff was transferred to a different cell. That cell flooded with sewage on November 28, 2008. (Doc. 1, p. 17). Plaintiff alleges that he was left in 1 inch of feces for approximately 24 hours. (Doc. 1, p. 17). Plaintiff was placed in a cell overrun by cockroaches at some point between November 7, 2008 and December 29, 2008. (Doc. 1, p. 17). Plaintiff also alleges he witnessed violence against other inmates during this time period. (Doc. 1, p.17).

Plaintiff was placed in the SHU in May 2009 while being investigated. (Doc. 1, p. 23).

Between September 1, 2010 and April 20, 2011, Plaintiff was incarcerated at the Federal Correctional Institution–Beckley ("FCI-Beckley") and the MCC Chicago. (Doc. 1, p. 12). Plaintiff was incarcerated at the Seminole County Jail in Sanford, Florida, from May 20, 2014 until November 26, 2014. (Doc. 1, p. 12). Plaintiff arrived at FCI Beckley on April 28, 2010. Plaintiff alleges that he has severe allergies and must take daily medication to avoid developing a chest infection. (Doc. 1, p. 18). At FCI-Beckley, Plaintiff's normal medication, Loratadine, was not available. (Doc. 1, p. 18). Plaintiff developed bronchitis and pneumonia. (Doc. 1, p. 18) After he recovered for those conditions, Plaintiff was prescribed chlorpheniramine. (Doc. 1, p. 18).

Plaintiff was charged with fighting on September 1, 2010 and taken to the SHU at FCI-Berkley. (Doc. 1, p. 18). Plaintiff alleges he was detained there "long past the time one would typically be detained for fighting." (Doc. 1, p. 18). While in the SHU, Plaintiff experienced visions of a large black sphere that communicated with him about the origins of humanity. (Doc.

1, p. 19-20). Plaintiff alleges that his letters to his family became incoherent during this period, and when they contacted the facility, the facility did nothing. (Doc. 1, p. 20). Plaintiff eventually returned to MCC-Chicago where he persisted in an unresponsive state, until another inmate suggested that the chlorpheniramine pills were to blame; Plaintiff stopped taking the pills, and his condition improved. (Doc. 1, p. 21).

Plaintiff was released from custody in 2011. (Doc. 1, p. 21). Plaintiff continued to experience psychiatric difficulties and attributes his behavior during that time to his mental problems. (Doc. 1, p. 21).

Plaintiff was arrested on June 8, 2012 in Mexico and placed in Federal Detention Center-Miami ("FDC – Miami"). He was placed in the SHU without explanation. (Doc. 1, p. 23). He was then transported to Federal Transfer Center-Oklahoma ("FTC-Oklahoma") and "black boxed" without explanation. (Doc. 1, p. 23). While at FTC-Oklahoma, Plaintiff was housed in the SHU. (Doc. 1, p. 12). Plaintiff was "black boxed" and given SHU housing again while transferred from Federal Correctional Institution Loretto ("FCI-Loretto") to MCC-Chicago between January 7, 2012 and January 14, 2013. (Doc. 1, p. 23). Plaintiff alleges this happened because he was mistakenly designated a sovereign citizen. (Doc. 1, p. 23-24). Plaintiff was placed in the SHU again from January 23, 2013 until January 26, 2013 at MCC-Chicago without explanation. (Doc. 1, p. 24). Plaintiff was placed in the SHU at Federal Detention Center-Philadelphia without explanation between June 10, 2013 and June 12, 2013. (Doc. 1, p. 24). He was then transferred twice, and placed in secure housing both times at Federal Correctional Institution-Petersburg in Virginia and the Virginia Central Regional Jail between June 12, 2013 and June 19, 2013. (Doc. 1, p. 24).

Plaintiff was re-incarcerated again on May 13, 2014 in the Seminole County Jail in Sanford, Florida. (Doc. 1, p. 22). Plaintiff was once again placed in a 7 x 7 cell, subjected to light 24 hours a day, and placed under video surveillance that was broadcast through the jail to other inmates and visitors. (Doc. 1, p. 22). Plaintiff's access to hygiene products was minimal, and he was not allowed to shave or cut his hair. (Doc. 1, p. 22). He was not allowed to exercise outside. (Doc. 1, p. 22). Plaintiff entered a 7-day dissociative state that he attributes to these conditions. (Doc. 1, p. 22). He further alleges that Seminole County told him those conditions were "per the U.S. Marshals." (Doc. 1, p. 22).

From December 23, 2014 to January 9, 2015, Plaintiff was "black-boxed" in transit and then placed in the SHU at FTC-Oklahoma. (Doc. 1, p. 24). As a result of the method of transit, Plaintiff suffered a wrist injury. (Doc. 1, p. 24). Plaintiff alleges that he was told that he had been "validated" as a gang leader, but Plaintiff denies that he was validated as a gang leader and denies that he was ever a gang leader. (Doc. 1, p. 24).

Between January 9, 2015 and March 3, 2015, Plaintiff was placed in the SHU at FCI-Loretto and on lockdown at United States Penitentiary-Canaan. (Doc. 1, p. 24). Plaintiff alleges that he was returned to FCI-Loretto by mistake and placed in the SHU pending re-designation but was transferred before he could be re-designated. (Doc. 1, p. 24).

Plaintiff was once again black boxed in transit and placed in the SHU at FTC Oklahoma. (Doc. 1, p. 24).

Finally, Plaintiff alleges that he was black boxed while travelling form USP-Marion to MCC Chicago on June 8, 2015. (Doc. 1, p. 25).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into thirteen counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 – Defendant United States willfully brutalized Plaintiff, thus intentionally inflicting emotional distress, between October 17, 2008 and December 29, 2008 in Roanoke, Virginia and MCC Chicago in Illinois;**
>
> **Count 2 – Defendant United States willfully brutalized Plaintiff, thus intentionally inflicting emotional distress, between September 1, 2010 and April 20, 2011 at FCI-Berkley and MCC Chicago;**
>
> **Count 3 – Defendant United States willfully brutalized Plaintiff, thus intentionally inflicting emotional distress, between May 20, 2014 and November 26, 2014 in Sanford, Florida;**
>
> **Count 4 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress upon him while at MCC Chicago in May 2009;**
>
> **Count 5 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress between June 9, 2012 and August 8, 2012 at the Federal Detention Center in Miami and at the Oklahoma City Transfer Center in Oklahoma;**
>
> **Count 6 - Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress between January 7, 2013 and January 14, 2013 at FTC Oklahoma;**
>
> **Count 7 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress between January 23, 2013 and January 26, 2013 at MCC Chicago;**
>
> **Count 8 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress between June 10, 2013 and June 12, 2013 at the FDC in Philadelphia, Pennsylvania;**
>
> **Count 9 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions during transit and after, injuring his wrist**

**and aggravating his PTSD and thus negligently harmed Plaintiff between December 23, 2014 and January 9, 2015 at FTC-Oklahoma;**

**Count 10 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress between January 9, 2015 and March 3, 2015 at the FCI in Loretto, Pennsylvania and the USP-Canaan in Waymarket Pennsylvania;**

**Count 11 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress between April 21, 2015 and April 20, 2015 at FTC-Oklahoma;**

**Count 12 – Defendant United States negligently subjected Plaintiff to unnecessary security conditions, aggravating his PTSD and thus negligently inflicting emotional distress on June 8, 2015 while in transit from the United States Penitentiary in Marion and MCC Chicago.**

**Count 13 - Defendant United States was medically negligent when it changed Plaintiff's prescription from Loratadine to chlorphenaramine on April 28, 2010 at FCI Beckley**

The FTCA constitutes a limited waiver of the United States' sovereign immunity and allows individuals to bring an action for damages against the Federal Government for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *Warrum v. United States,* 427 F.3d 1048, 1049 (7th Cir.2005). As an initial matter, Plaintiff checked the box on his Complaint indicating that he would like trial by jury. The Court informs Plaintiff that FTCA case must be tried to a judge. 28 U.S.C. § 2402.

It also appears from the face of Plaintiff's Complaint that it is barred for a number of reasons. Although typically, affirmative defenses such filing after the statute of limitations and failure to exhaust administrative remedies are litigated by the parties after service, *see Jones v. Bock*, 549 U.S. 199, 212 (2007), a Court may invoke these defenses on § 1915A review when the

availability of the defense is apparent on the face of the Complaint.  *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

The Court finds that Plaintiff's Complaint falls afoul of the statute of limitations. A plaintiff must file an FTCA claim "within two years after such claim accrues" or it is "forever barred." 28 U.S.C. § 2401(b); *Kanar v. United States,* 118 F.3d 527, 528 (7th Cir. 1997). Specifically, a plaintiff must present the claim to the appropriate agency in writing, thus exhausting administrative remedies within two years.  28 U.S.C. § 2401(b); *Jastremski v. United States*, 737 F.2d 666, 669 (7th Cir. 1984).

Federal law governs when a claim accrues under the FTCA.  *McCall v. United States*, 310 F.3d 984, 987 (7th Cir. 2002). A claim begins to accrue when the plaintiff, or a reasonable person in his position, is aware of his injury and its probable cause is an act or omission by the government. *See United States v. Kubrick,* 444 U.S. 111, 122-23 (1979) (holding that a claim accrues when a plaintiff knows both the existence and the cause of his injury); *Arroyo v. United States*, 656 F.3d 663, 668 (7th Cir. 2011); *Barnhart v. United States,* 884 F.2d 295, 298 (7th Cir. 1989) (collecting cases).  In cases which may have multiple causes of injury, the statute of limitations only begins to run when the plaintiff has knowledge of the government's potential liability; knowledge of another cause will not suffice.  *Arroyo*, 656 F.3d at 668-69 (citing *Nemmers v. United States*, 795 F.2d 628, 629 (7th Cir. 1986)).

Therefore, an FTCA claim accrues when "an individual actually knows enough to tip him off that a governmental act (or omission) may have caused his injury; or a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *Arroyo*, 656 F. 3d  at 669.  Put another way, the claim accrues "either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious

Page **8** of **14**

circumstances of which he might have been aware would have discovered the government cause—whichever comes first." *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985). An individual need not know that the government conduct was negligent, only that it potentially caused the injury. *United States v. Kubrick*, 444 U.S. 111, 122 (1979).

Plaintiff's Complaint alleges that he filed his administrative remedy form on February 12, 2016. (Doc. 1, p. 10). The form itself is not in the record. Plaintiff alleges that he was not diagnosed with PTSD until February 6, 2016, and thus did not "discover" his injury until that time. (Doc. 1, p. 11). Plaintiff alleges that both his attempts to exhaust his administrative remedies, and by extension, this suit, are timely.

However, a plaintiff does not need to know the full extent and severity of his injury in order for a court to attribute knowledge of the injury to him. *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013) ("The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known."); *Goodhand v. United States*, 40 F.3d 209, 214 (7th Cir. 1994) ("So even if [defendants] could be accused of trying to minimize the severity of [plaintiff's] condition . . . a plaintiff cannot wait to sue until she learns the full extent of her injury."). A plaintiff need only know that his injury is non-trivial and worth suing over. *Goodhand*, 40 F.3d at 214.

Although he did not receive a label for it until February 6, 2016, Plaintiff's Complaint makes clear that he was aware of his psychiatric symptoms and other injuries long before that time period. For example, Plaintiff's Complaint explicitly states that he was "aware of the underlying civil rights abuses" at the time they occurred. (Doc. 1, p. 11). Plaintiff also submitted his mother's testimony in another case that described her impression of his symptoms. (Doc. 1-1, p. 17). Additionally, one of Plaintiff's allegations is that the prison caused some

psychotropic symptoms through mismanagement of medication and failed to adequately treat him. Plaintiff was clearly aware of those symptoms because he alleges that another inmate told him to stop taking one of his prescriptions, and when he did so, his symptoms improved. He also alleges that his family became concerned when he began experiencing those symptoms and tried to intervene. Plaintiff need not have a specific label before he can file suit; it is sufficient that he is aware that he was harmed and Plaintiff's Complaint explicitly states that he was aware of the harm for years prior to the time when Plaintiff sought administrative relief.

Plaintiff also filed a prior lawsuit that significantly overlaps with this one. In 2014, Plaintiff filed a *Bivens* action against the United States Marshal and others based on his incarceration in the Seminole County jail. Case No. 14-cv-936-Orl-41TBS (M.D. Fla. March 28, 2016). When a person initiates a legal action against a party based on an injury, that person fairly can be taken to have discovered the cause of his injury at least at that time. *Barnhart v. United States*, 884 F.2d 295, 299 (7th Cir. 1989) (refusing to toll the FTCA's two year statute of limitations for a plaintiff's suit against the VA, where the plaintiff suffered from severe tardive dyskinesia brought on by "major tranquilizer therapy" administered by VA hospitals, in light of the fact that the plaintiff brought suit against the manufacturer of the drug during the time period of the statute of limitations, and thus "had clearly 'discovered' the cause of his injury-and understood it well enough to seek redress.") (citing *Crawford v. United States,* 796 F.2d 924, 930 (7th Cir. 1986)).

It is clear from the Complaint and the exhibits that Plaintiff was well aware of his symptoms, had described them to others, and even made damages claims regarding them well before February 6, 2016. Because Plaintiff did not file for an administrative remedy within two years of the actions encompassed by Counts 1-2, 4-8, and 13, and because there is no support for

the proposition that delay of receiving an official diagnosis tolls the statute, those claims will be dismissed with prejudice as barred by the statute of limitations.

Even if Plaintiff's claim was not barred by the statute of limitations, he did not exhaust his administrative remedies prior to filing suit as required by the FTCA.  28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106 (1993).  Plaintiff filed suit on August 29, 2016.  (Doc. 1). Plaintiff's Complaint alleges that he filed his FTCA form on February 12, 2016 (Doc. 1, p. 10). It also alleges that he did not receive a response at the time he filed suit.  (Doc. 1, p. 10).  During the pendency of this action, Plaintiff also filed a "Notice and Disclosure" on October 17, 2016. (Doc. 10).  In that document, Plaintiff averred that he had received certified mail denying his tort claim on October 7, 2016, approximately 40 days after he filed suit.  Perhaps anticipating difficulties, Plaintiff filed a motion seeking to amend his Complaint on November 4, 2016, which for reasons discussed below, the Court will deny.  (Doc. 12).

A plaintiff may not bring a suit unless he has first presented his claim for relief to the appropriate federal agency and the agency has denied the claim.  28 U.S.C. § 2675(a).  Failure to exhaust remedies before bringing suit dooms the claim.  *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).  Further, a plaintiff who brings an FTCA claim prior to exhausting must file a new complaint in federal district court, even if he subsequently exhausts.  *Wess v. U.S. Government*, No. 10 C 4555, 2010 WL 4386861 at *2 (N.D. Ill. 2010). *See, e.g., Duplan v. Harper,* 188 F.2d 1195, 1199 (10th Cir. 1999) (premature complaint cannot be cured through amendment; instead plaintiff must file a new suit); *Edwards v. D. C.,* 616 F.Supp.2d 112, 117 (D.D.C. 2009) (failure to exhaust administrative remedies cannot be cured by amending the complaint); *Sparrow v. U.S. Postal Serv.,* 825 F.Supp. 252, 255 (E.D.Cal. 1993) (FTCA requires administrative claim be finalized at the time

complaint is filed; plaintiff's complaint cannot be cured through amendment); *Baires v. U.S.,* C 09–5171, 2010 WL 3515749 at * 9, n. 7 (N.D.Cal. Sep.8, 2010) (Breyer, J.) (noting there is "more agreement" that a plaintiff who files an untimely FTCA action and subsequently exhausts his administrative remedies, cannot then amend his complaint to cure the initial error); *Estate of Przysiecki v. Eifert,* 07 CV 39, 2007 WL 3306074 at *3 (S.D.Cal. Nov.2, 2007) (Hayes, J.) (to permit plaintiff's premature filing of an FTCA claim to be cured by filing an amended complaint after plaintiff exhausted administrative remedies would be inconsistent with case law and the rationale behind the jurisdictional prerequisite made by FTCA); *Ficken v. Rice,* Civ. A. 04–1132, 2006 WL 123931 at *8 (D.D.C. Jan.17, 2006) (Urbina, J.) (plaintiff's failure to exhaust is fatal to his claim, and the defect cannot be cured by amendment of the complaint at a later date). For that reason, the fact that Plaintiff has moved to amend the Complaint will not save this case from dismissal for failure to exhaust.

Additionally, the exhibit submitted by Plaintiff only refers to claims that occurred in October 2008, and September 2010. There is no indication that Plaintiff attempted to exhaust any claims other than those arising on those dates. An FTCA administrative claim requires four elements: (1) a written notification of an incident; (2) a claim for money damages in a sum certain; (3) the title or legal capacity of the person signing; and (4) evidence of that person's authority to represent the claimant. *See Kanar v. United States,* 118 F.3d 527, 528 (7th Cir. 1997); 28 C.F.R. § 14.2(a) (2005). Although a plaintiff is not obligated to present legal theories during his exhaustion efforts, he has the burden of presenting sufficient facts to permit the relevant agency to investigate the claim. *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003); *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996). If a cause of action would have been clear to a "legally sophisticated reader," the notice requirement is satisfied. *Id.*

As the Federal Bureau of Prisons[1] only considered claims arising out of incidents on October 2008 and September 2010, they cannot be said to have notice of Plaintiff's claims arising out of other time periods. This dooms Counts 3-13. For these reasons, the Court finds that Plaintiff did not adequately exhaust his administrative remedies prior to filing suit and that his claims in Counts 3-13 must be dismissed at this time. The dismissal as to Counts 9-12 is without prejudice as Plaintiff is still within the two year period on those claims, although Plaintiff must file a new lawsuit after exhausting.

### Pending Motions

The Court will also deny Plaintiff leave to amend at this time. Although the Federal Rules of Civil Procedure permit Plaintiff to amend once as a matter of course prior to service, in this instance Plaintiff has not followed this Court's local rules. Local Rule 15.1 requires that all new material in an amended complaint be underlined. Plaintiff has not done so here, making it difficult to determine the scope of the relevant amendment. For that reason, Plaintiff's motion for leave to amend the Complaint will be **DENIED**.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1-2, 4-8, and 13** will be dismissed with prejudice for falling outside of the relevant statute of limitations and for failure to exhaust administrative remedies prior to filing suit. **COUNTS 3, 9-12** will be dismissed without prejudice for failure to exhaust administrative remedies, although Plaintiff may file another suit to raise these claims after exhaustion.

---

[1] Plaintiff's Complaint vaguely alleges that multiple government groups were responsible for his injuries because he was in the custody of different agencies at different times. Given this, there's a reasonable argument that Plaintiff would have to present his administrative claim to each agency in term. But the Court assumes, without deciding at this time that the Federal Bureau of Prisons is the relevant agency.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED: November 22, 2016**

*s/J. Phil Gilbert*
**United States District Judge**