# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| WILLIAM A. WHITE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 16−cv–0968–JPG |
| UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**GILBERT District Judge:**

This matter is now before the Court on Plaintiff's Motions for Reconsideration, (Doc. 17) (Doc. 19), and Motion for Leave to File Amended Complaint. (Doc. 18). Plaintiff originally filed suit on August 29, 2016. (Doc. 1). The Court screened the case pursuant to § 1915A on November 22, 2016; and dismissed some of Plaintiff's claims as being beyond the statute of limitations, while dismissing others for failure to exhaust. (Doc. 15) Plaintiff now asks the Court to reconsider that decision in a motion filed on December 5, 2016. (Doc. 17). Plaintiff also requests leave to file an amended complaint in a contemporaneously filed motion. (Doc. 18). Plaintiff also filed a third motion, docketed as a Motion for Reconsideration, that requests immediate ruling on the prior motions. (Doc. 19).

## The Motions

Plaintiff's Motion to Reconsider the Court's Order of November 22, 2016 argues that the Court erred in not finding a Complaint for a physical injury. (Doc. 17, pp. 1-2). The Motion concedes that this issue was not addressed by the Court in its opinion, but alleges that the failure

1

to address this point caused the Court to apply the incorrect statute of limitations. *Id.* The Motion also speculates that the Court might have found that a Post-Traumatic Stress Disorder ("PTSD") diagnoses is not a physical injury. (Doc. 17, p. 2).

Plaintiff's second argument is that the Court failed to consider Illinois' continuing tort doctrine. *Id.* Plaintiff alleges that the conduct at issue here, which occurred from 2008 through 2015, was a continuing tort. (Doc. 17, pp. 2-3).

Third, Plaintiff argues that the statute of limitations on a physical injury does not run until an internal injury is diagnosed. (Doc. 17, pp. 3-4). Plaintiff argues that his case is analogous to *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013). Plaintiff reiterates, as he did in the Complaint, that his claim did not accrue until February 2, 2016,[1] the day he was diagnosed with PTSD. (Doc. 17, p. 4).

Next, Plaintiff argues that the Court could not consider the failure to exhaust administrative remedies at the pleading stages because exhaustion is an affirmative defense, and cites to *King v. Cooke*, 26 F.3d 720 (7th Cir. 1994). *Id.* Plaintiff argues that a court cannot dismiss claims for failure to exhaust on threshold review unless a litigant specifically pleads both that he failed to exhaust and that the administrative remedy was available. *Id.* In the alternative, Plaintiff argues that his proposed Amended Complaint addresses the deficiencies, in that it shows 1) that Plaintiff has attempted to exhaust his claims against the US Marshals Service, but his claims have been repeatedly returned to sender; and 2) that he cannot exhaust his administrative remedies at to the Bureau of Prisons because they have lost his prison records. *Id.*

Finally, Plaintiff argues that the Court misinterpreted the Florida litigation that he previously filed. (Doc. 17, p. 5). Specifically, Plaintiff alleges that the Florida litigation did not

---

[1] The Motion to Reconsider says Plaintiff discovered his injury on February 2; the Complaint states the day was February 6. (Doc. 1, p. 11).

2

raise his PTSD and the attendant physical brain damage. *Id.* In conclusion, Plaintiff asks the Court to reinstate the Complaint and order it served. *Id.*

Plaintiff's second motion to reconsider, entitled "Praecipe" and filed on May 30, 2017, informs the Court that Plaintiff's motions, presumably Docs. 17 and 18, are ready for adjudication. (Doc. 19, p. 1) Plaintiff claims that the Court's "failure" to rule on Plaintiff's earlier filed motions amounts to a "failure to exercise jurisdiction." (Doc. 19, p. 2). Plaintiff goes on to state that if the Court does not rule on his motions, he will file a Motion for a Writ of Mandamus in the Seventh Circuit and file a new case in this Court using the same amended pleading that he has filed twice before. *Id.* A review of the Court's records show that Plaintiff filed a new action on June 30, 2017, along with a Motion for Joinder and a Motion to Waive Filing Fees. Case No. 17-cv-0683-JPG. That case is currently awaiting threshold review. *Id.* Plaintiff then goes on to inform the Court that if it does not grant his motion for reconsideration, he will have the Seventh Circuit reverse this court; Plaintiff describes this reversal as "inevitabl[e]." *Id.* Plaintiff states that his legal maneuverings will consume "substantial" judicial resources. *Id.*

Plaintiff also submitted a proposed amended complaint on December 5, 2016. (Doc. 18).

## Analysis

The Federal Rules of Civil Procedure do not explicitly contemplate motions to reconsider. However, the Seventh Circuit has approved of district courts construing motions pursuant to the standards in Rule 59(e) or Rule 60(b) if it appears a party is requesting relief available under those rules. *U.S. v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992) ("Though [Deutsch] fails to cite any rule as the basis for his motion, the fact that it challenges the merits of

the district court's decision means that it must fall under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.").

Rule 59(e) provides a basis for relief, where a party challenges the Court's application of the law to the facts of the case. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174-76 (1989). While Rule 59(e) permits a district court to exercise its discretion to correct its own errors, sparing the time and expense of further proceedings at the appellate level, *Divane v. Krull Elec. Co. Inc.*, 194 F.3d 845, 848 (7th Cir. 1999), "ill-founded requests for reconsideration of issues previously decided . . . needlessly take the court's attention from current matters." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F.Supp.2d 804, 820 (S.D. Ill. 2002). Typically, Rule 59(e) motions are granted upon a showing of either newly discovered evidence not previously available or evidence in the record that clearly establishes a manifest error of law or fact. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007); *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001).

Plaintiff has specifically invoked F.R.C.P. 59(e) and filed his motion within the time period contemplated by that Rule. The Court will therefore evaluate that motion under the Rule 59(e) standard.

Plaintiff first speculates that the Court did not consider him to have alleged that he suffered from a physical injury. Plaintiff concedes that this point was not addressed by the threshold order. The matter was not addressed in the threshold order because the Court did not consider the nature of Plaintiff's injury in deciding to dispose of this case. While 42 U.S.C. § 1997e states that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . .," the Seventh Circuit has decreed that this provision does not

bar the actual filing of suit, but rather serves as a limitation on damages.[2] *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003). As the relevant case law precludes dismissing a claim on these grounds, it is not something that this Court generally considers on 1915A review, and the Court did not consider this issue in this case. The question of whether Plaintiff suffered from a physical injury has no bearing on this order or the Court's November 22, 2016 order.

Plaintiff next argues that the Court's decision to dismiss certain claims on statute of limitations grounds was erroneous because the Court failed to consider Illinois continuing tort doctrine. Although Plaintiff recites the correct standard, namely that the continuing tort doctrine applies so long as the acts, not the distress, continue, he does not apply it correctly to his situation.

Although Plaintiff argues that the Court failed to apply Illinois law, federal claim-accrual rules govern cases arising under the FTCA, and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013); *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001). A tort can be said to continue so long as the tortious acts, and not the injury caused by them, continues to happen. *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) (finding that the violation continued so long as Freeman and Howell, two agents with the FBI, continued to engage in extreme and outrageous conduct against the Plaintiff); *Abu-Shawish v. United States*, 546 F App'x 576, 579 (7th Cir. 2013) (rejecting the plaintiff's theory that 3 prosecutions that stemmed from an improper investigation were, taken together, a continuing violation because the investigation, not the prosecutions, was the unlawful act; the prosecutions were merely the injury).

---

[2] Plaintiffs without a physical injury can only recover nominal damages (typically $1), punitive damages, and fees. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003).

Plaintiff's argument runs as follows: "Here, there is continuing infliction of a physical injury, the brain damage underlying the PSTD." (Doc. 17, p. 3). Plaintiff believes that "if a tortfeasor, through repeated acts, causes a single injury, then the tort is continuing in nature." (Doc. 17, p. 2). Thus, Plaintiff's argument is that because he has suffered a single, allegedly physical injury, that the acts that contributed to that injury must be part of the same continuing violation. This puts the cart before the horse. It is not the nature of the injury that is relevant; it is the nature of the unlawful act. Therefore, all of Plaintiff's arguments about whether he suffers from a mental or physical injury are irrelevant. The Court must look to the nature of the acts alleged.

The Complaint does not allege a continuing series of the same kind of violation; it alleges a discrete set of acts. Plaintiff's case is not analogous to the situation described in *Alexander*, where 2 individually named FBI agents engaged in extreme and outrageous behavior designed to frame the plaintiff. There, the same 2 individuals were involved throughout and the course of conduct had a specific goal. In contrast, Plaintiff's allegations cover years of conduct committed by any number of faceless individuals working at different prisons and institutions across the country. There is no allegation that the same individuals orchestrated a course of conduct against Plaintiff. Plaintiff's Complaint is written almost entirely in the passive voice; Plaintiff never identifies the specific person or persons acting upon him, but it is a fair assumption from the allegations in the Complaint that many people acted. It is not even clear that the actors are all part of the same government agency; Plaintiff never identifies whose custody he is in or when that custody changes. Moreover, the nature of the unlawful activity at issue changes greatly from one location to another. For example, Plaintiff alleges that at certain locations he was subjected to unlawful conditions of confinement (the nature of which differs considerably); in

another he was deprived of needed medication; in a third he had to watch unlawful acts, etc. There is very little obvious commonality to the events, other than that they all happened to Plaintiff. Simply, put there is nothing in the Complaint that suggests that Plaintiff was subjected to a continuing violation. Plaintiff was subjected to different unlawful acts, that occurred during a 7 year period in different locations, presumably carried out by different people.

Plaintiff next argues that the claim did not accrue until he discovered he had a physical injury, i.e., until he discovered that he suffered from PTSD, which manifests itself in organic changes in the brain. For the reasons discussed above, it is not relevant whether Plaintiff claims that he has a mental or physical injury for purposes of threshold review. Plaintiff argues that his case is analogous to *Devbrow v. Kalu*, a case where a prisoner brought suit over the delay in diagnosing his prostate cancer. 705 F.3d 765. Plaintiff argues that because he did not discover the physical process behind his psychological symptoms until he received a diagnosis, the claims did not accrue until then. He argues that Devbrow's claim was not held to accrue until Devbrow received a cancer diagnosis, and that his case deserves the same treatment. But in *Devbrow*, the injury that the court considered was that "he had cancer that might have been diagnosed and treated earlier but for the defendants' deliberate indifference." 705 F.3d at 766. This is sometimes called a "loss of chance" theory; had the plaintiff known certain information, he could have seized an opportunity (in *Devbrow*, cancer treatment), and the loss of that opportunity harmed the plaintiff.

Plaintiff's facts are distinguishable; as discussed in the Court's initial order, receiving a PTSD diagnosis did little more than put a label on symptoms that Plaintiff had been aware of for years. The Complaint seeks to recover for dissociative episodes, social withdrawal, his decision to close his business and divorce his wife, hypervigilance, an exaggerated startle reaction, and

7

difficulty sleeping. The Complaint specifically alleges that he began experiencing the dissociative episodes in 2010 while at FCI Beckley. (Doc. 1, p. 18). He alleges that he experienced a severe instance of social withdrawal or unresponsiveness on December 9, 2010. (Doc. 1, pp. 20-21). Plaintiff alleges that he divorced his wife and closed his business after his release in 2011. (Doc. 1, p. 21). The Complaint also reports trouble sleeping beginning after Plaintiff's release in 2011. *Id.* Plaintiff was aware of each and every one of the symptoms he seeks to recover for years prior to February 2016. Devbrow could not have known that he was losing treatment opportunities until he received his cancer diagnosis. Plaintiff on the other hand, has specifically plead that he experienced the exact same symptoms for which he seeks to recover years prior to filing for an administrative remedy and this suit. The cases are distinguishable, and Plaintiff has failed to show an error of fact or law.

Plaintiff also attempts to claim that he could not have brought a claim for a physical injury, as distinct from his civil rights violations, until he received the PTSD diagnosis, because he was unaware that there was an underlying physical injury. As discussed above, the lack of a physical injury does not bar suit in the Seventh Circuit; it may bear on the question of damages, but a plaintiff can still bring the claim. Additionally, some diligence on a litigant's part is required. As the Court noted in its threshold order, the standard is whether "a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011). There is no explanation in the Complaint or the Motion to Reconsider on why Plaintiff waited until February 2016 to get diagnosed; he has not alleged that individuals were deliberately indifferent to his mental health needs and it appears that he was out of prison during some of the years at issue and could have sought medical

attention on his own. Plaintiff clearly could have discovered the alleged physical component of his injury earlier; the fact that he chose not to does not keep his claim from accruing.

Plaintiff also argues that the Court "misinterpreted" the Florida litigation. Specifically he argues that his claim for damages in that case is distinct from his claim for damages here. The Court cited to the Florida case for the proposition that Plaintiff was aware of his injuries at the time of that litigation and thus could have brought his FTCA claim at that time. Plaintiff once again raises his argument that although he was aware of his mental symptoms, he was not aware of the underlying physical changes behind those symptoms until he received his PTSD diagnosis. But that is not an explanation for why Plaintiff could not have brought an FTCA claim at the time Plaintiff filed his *Bivens* suit. That is particularly true with the Florida litigation, because Plaintiff has alleged that he did suffer physical injuries in that suit, thus raising the § 1997e bar that Plaintiff is attempting to get around by alleging a physical injury. Reviewing the Florida litigation reveals no grounds to delay accrual of this cause of action or to toll the statute of limitations. The Court finds no error of law or fact in its prior discussion of the Florida litigation.

The Court next turns to Plaintiff's arguments regarding the Court's position on exhaustion. Plaintiff argues that the Court erred because *King v. Cooke* specifically states "Dismissal for failure to exhaust administrative remedies is not proper at the pleading stage because exhaustion is an affirmative defense." (Doc. 17, p. 4). Plaintiff did not provide a page number for his citation, and the Court cannot find the quotation attributed to the Seventh Circuit anywhere in the *King* opinion. 26 F.3d 720 (7th Cir. 1994). The *King* opinion addressed the propriety of letting the defendants amend their answer and whether the district court's ruling on summary judgment was premature; the only reference to exhaustion at all is to distinguish the

*Daugherity* decision, which found that prejudice resulted when a defendant raised the exhaustion defense more than 3 years after filing an answer. *Id*. at 724.

It appears that Plaintiff may have been led astray by *Massey v. Wheeler*, which contains the following quote: "[Plaintiff's] only route around this inescapable conclusion [that failure to plead exhaustion mandates dismissal of the claim] relies on the argument that dismissal for failure to exhaust administrative remedies is not proper at the pleading stage because exhaustion is an affirmative defense," followed by a citation to *King*. 221 F.3d 1030, 1034 (7th Cir. 2000). Plaintiff may have believed that *King* therefore stood for that proposition and subsequently failed to actually read it himself. But as *Massey* makes quite clear, the established law in the Seventh Circuit is that while exhaustion is an affirmative defense, failure to exhaust prior to filing suit mandates dismissal and such dismissals may occur with reference only to the sufficiency of the complaint. *Id.* The Seventh Circuit has also explicitly stated that if the availability of an affirmative defense is plain from the face of the complaint, the district judge need not wait for an answer before dismissing the suit. *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002). Therefore, Plaintiff's position that a court cannot dismiss on exhaustion grounds on 1915A review is patently wrong. His citation in support is incorrect, and he cites no other case law for that proposition.

Plaintiff's arguments that he can fix this problem on amendment are also unavailing. First, as previously pointed out, when a plaintiff files suit prior to exhaustion, a court must dismiss the case, and the plaintiff must file a new case. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). *McNeil* is a Supreme Court decision; this Court has no discretion to ignore that precedent—it is mandatory and binding. And as noted in the Court's prior order, amendment does not cure an exhaustion

deficiency. *Wess v. U.S. Government*, No. 10 C 4555, 2010 WL 4386861 at *2 (N.D. Ill. 2010). *See, e.g., Duplan v. Harper,* 188 F.3d 1195, 1199 (10th Cir. 1999) (premature complaint cannot be cured through amendment; instead plaintiff must file a new suit); *Edwards v. D. C.,* 616 F.Supp.2d 112, 117 (D.D.C. 2009) (failure to exhaust administrative remedies cannot be cured by amending the complaint); *Sparrow v. U.S. Postal Serv.,* 825 F.Supp. 252, 255 (E.D.Cal. 1993) (FTCA requires administrative claim be finalized at the time complaint is filed; plaintiff's complaint cannot be cured through amendment); *Baires v. U.S.,* C 09–5171, 2010 WL 3515749 at * 9, n. 7 (N.D.Cal. Sep.8, 2010) (Breyer, J.) (noting there is "more agreement" that a plaintiff who files an untimely FTCA action and subsequently exhausts his administrative remedies, cannot then amend his complaint to cure the initial error); *Estate of Przysiecki v. Eifert,* 07 CV 39, 2007 WL 3306074 at *3 (S.D.Cal. Nov.2, 2007) (Hayes, J.) (to permit plaintiff's premature filing of an FTCA claim to be cured by filing an amended complaint after plaintiff exhausted administrative remedies would be inconsistent with case law and the rationale behind the jurisdictional prerequisite made by FTCA); *Ficken v. Rice,* Civ. A. 04–1132, 2006 WL 123931 at *8 (D.D.C. Jan.17, 2006) (Urbina, J.) (plaintiff's failure to exhaust is fatal to his claim, and the defect cannot be cured by amendment of the complaint at a later date).

Plaintiff has not engaged the Court's reasoning on this point at all. He has not provided any case law suggesting that he can cure exhaustion deficiencies during the pendency of an action or any authority that excuses him from the requirement of filing a new lawsuit. He has not pointed to any legal error that would justify relief under Rule 59(e).

Plaintiff does allege that he has new facts that would show that he is excused from exhausting. First of all, he alleges that he has given adequate notice to both the Bureau of Prisons and the U.S. Marshals through his efforts to exhaust. Although Plaintiff has couched this

argument in terms stating that he will amend the complaint to present new facts, Plaintiff is actually making a legal argument that notice is sufficient for exhaustion. Plaintiff cites no case law for the idea that notice can be a substitution for the grievance process and the Court knows of none. In fact, there is black letter law for the opposite proposition: the purpose of grievance procedures is not to provide constructive notice of an individual's claim, but in order to facilitate potential settlement negotiations. *Smoke Shop LLC v. United States*, 761 F.3d 779, 788 (7th Cir. 2014). Plaintiff's offer to show facts relating to notice has no legal effect because notice is not a substitution for exhaustion.[3]

Plaintiff has also offered to plead new facts showing that the BOP lost or destroyed his prison records, but the Court cannot see how that is relevant to the issue of exhaustion. Plaintiff has not explained why the loss of the records would preclude him from exhausting. Generally only 4 elements are required to submit a proper administrative claim: 1) notification of the incident; 2) a demand for money damages in a sum certain; 3) the title or legal capacity of the person signing; and 4) evidence of the person's authority to represent the claimant. 28 C.F.R. § 14.2(a); *Smoke Shop LLC*, 761 F.3d at 786. A claimant is not required to submit documentation of the incident and so the loss of some relevant documents does not make the remedy unavailable. Plaintiff's new facts in support of his argument that dismissal for exhaustion was improper have no legal significance and thus, no merit.

The Court finds that Plaintiff has not shown that the Court made error of law or fact in dismissing the case for failure to exhaust. In fact, Plaintiff submitted a notice of administrative response on July 17, 2017, which includes correspondence from the US Marshals Service asking for medical records. (Doc. 20). This shows that the administrative remedy process is still in

---

[3] The Court is also skeptical that a letter returned to sender could even constitute adequate notice, but it appears that Plaintiff has since been able to contact that US Marshals Service, Doc. 20, so it is a moot point.

progress; it has not been completed, as is necessary to file suit. It is not enough to merely submit a claim, the claim must have been "finally denied by the agency in writing." 28 U.S.C. § 2675. Until Plaintiff can show proof in writing that the relevant agency has denied his claims for compensation, he has not exhausted his remedies. As Plaintiff has submitted a document showing that he is still pursuing his administrative remedies as of July 6, 2017, any complaint submitted prior to that date is premature.

However, the "Notice" at Doc. 20 does appear to indicate that the US Marshals Service is considering claims between October 17, 2008 and June 2015. (Doc. 20, p. 2). This is inconsistent with the Court's Order dismissing certain claims prior to 2014 with prejudice. Because the purpose of the administrative remedy requirement is to facilitate settlement, and because the Court does not wish to interfere with an agency's authority to settle any and all claims, the Court finds that its previous dismissal of some of Plaintiff's claims on statute of limitations grounds was premature in light of the indication that Plaintiff has an active administrative request for relief on those claim.[4] This is not an admission that the Court's prior order was incorrect or erroneous; it was merely premature.[5] The Court therefore grants Plaintiff's Motion to Reconsider in part as to the claims that were dismissed with prejudice as being time barred, specifically, as to Counts 1-2, 4-8, and 13 to the extent that the US Marshals Service was the relevant actor for those claims. However, the Court will not reinstate those claims or allow the case to proceed because those claims remain unexhausted.[6] Dismissal of all

---

[4] It is not clear to the Court that the US Marshals Service was the actor for all of the Counts because Plaintiff has not pleaded that point with specificity, but the Court will leave this issue for a more developed record.
[5] Should Plaintiff succeed in exhausting his remedies and re-filing suit, the Court believes that some of Plaintiff's claims will remain time-barred.
[6] This is particularly true if Plaintiff intends to continue to push his claim on appeal that the events at issue are a continuing violation. If they are a single continuing violation, then Plaintiff has clearly not exhausted his remedies for purposes of this suit because he was still pursuing his remedies as to the US Marshals in July 2017, almost a year after he filed suit.

of Plaintiff's claims is still proper because Plaintiff failed to exhaust his remedies prior to filing suit. The dismissal shall be without prejudice on the grounds that all claims are unexhausted.

As the Court has found that Plaintiff has not exhausted his administrative remedies, and amendment is unable to cure that deficiency, the Court denies Plaintiff's Motion to Amend as futile. *Wakley v. National Credit Union Admin.*, No. 07-1649, 2007 WL 2932015 at *2 (7th Cir. Oct. 9, 2007) ("And because the [plaintiffs] failed to exhaust their administrative remedies, the district court did not err in refusing to allow the [plaintiffs] to amend their complaint. . . Such amendment would have been futile.") (citing *Bethany Pharmacal Co. v. QVC Inc.,*, 241 F.3d 854, 860-61 (7th Cir. 2001)). The Court is also aware that Plaintiff has already filed a subsequent suit. If Plaintiff has received a final decision on some of his administrative requests, that suit may be properly before the Court, but the Court does not decide whether that suit has met the exhaustion requirement at this time.

## Disposition

For all of the above reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Reconsideration. (Doc. 17). To the extent that the Motion at Doc. 19 requests a ruling on the prior Motion for Reconsideration, it is **DENIED as MOOT**; to the extent that it requests a specific ruling, it is **DENIED**. To the extent that the Court's prior Order adjudged Counts 1-2, 4-8, and 13 of Plaintiff's to be barred by the statute of limitations and to the extent that the US Marshals Service is the relevant agency for purposes of FTCA exhaustion on those claims, that portion is **VACATED**. (Doc. 15). The Judgment shall be **AMENDED** accordingly. The Court also **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint as futile. (Doc. 18).

14

If Plaintiff wishes to appeal the dismissal of his case, his notice of appeal must be filed with this court within thirty days of the entry of this order. FED. R. APP. P. 4(a)(1)(A); *York Group, Inc. v. Wuxi Taihu Tractor Co., Ltd.*, 632 F.3d 399, 401 (7th Cir. 2011). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike." 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**
**DATED: August 10, 2017**

*s/J. Phil Gilbert*
**U.S. District Judge**